UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

**HAILIE PARDEE,**

        Plaintiff,

v

**EXPRESS LOGISTICS, INC.,**

        Defendant.

_____/

**Case No:**

**Hon:**

**Mag:**

Tim P. Seeger (P83315)
GREWAL LAW PLLC
801 Broadway NW Ste. 302
Grand Rapids, MI 49504
(616) 259-8463
tseeger@4grewal.com
_____/

## COMPLAINT AND JURY DEMAND

**NOW COMES** Plaintiff, Hailie Pardee, by and through her attorneys, Tim P. Seeger and GREWAL LAW PLLC, and for her Complaint against Express Logistics, Inc. ("Defendant Express Logistics") states as follows:

### GENERAL ALLEGATIONS AND VENUE

1.    This is an action stating a federal course of action pursuant to Title VII of the Civil Rights Act of 1964, as amended, 42 USC 2000e *et seq.*, discrimination pursuant to the Michigan Elliott-Larsen Civil Rights Act, MCL 37.2101 *et seq.*, and wrongful termination.

2. Plaintiff, Hailie Pardee ("Ms. Pardee"), at all times relevant herein, was a resident of the City of Lowell, Kent County, Michigan.

3. Defendant Express Logistics is a domestic corporation organized and doing business in Kent County, Michigan.

4. The incidents which are the subject matter of this lawsuit occurred in Kent County, Michigan.

5. This Honorable Court has "federal question" jurisdiction pursuant to 28 USC § 1331 for the reason that the Plaintiff's Complaint states claims pursuant to Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 USC §2000 *et seq.*

6. This Court has jurisdiction over State pendent claims also known as the Elliot-Larsen Civil Rights Act, Act 453 of 1976.

7. This Honorable Court has supplemental jurisdiction over the Plaintiff's state law claims pursuant to 28 USC §1367 because all claims are substantially related as to form part of the same case.

8. Venue is proper in this judicial district pursuant to 28 USC §1391 for the reason that the unlawful acts alleged occurred within this judicial district.

9. Ms. Pardee timely filed her Charges of Discrimination with the Equal Employment Opportunity Commission ("EEOC"), attached as **Exhibit A**.

10. Ms. Pardee received her Right-to-Sue Letters from the EEOC, dated January 29, 2024, attached as **Exhibit B.**

11. Plaintiff filed this Complaint within 90-days of receiving her Right-to-Sue Letter from the EEOC.

## **SPECIFIC FACTUAL ALLEGATIONS**

12. Plaintiff repeats and realleges each and every paragraph of this Complaint as though fully set forth herein verbatim.

13. Ms. Pardee was hired by Defendant Express Logistics on April 9, 2022.

14. She was first hired as a part time employee, working Saturdays, Sundays, and Mondays and would often pick up work on Fridays to help.

15. At that time, in October 2022, Ms. Pardee's work schedule changed. She continued working on Saturdays through Mondays, but went back to working every other Friday. She was still considered full time with Defendant Express Logistics with benefits, PTO and detention time.

16. On or about November 29, 2022, Ms. Pardee's doctor put her on work restrictions. Because of intense knee swelling, due primarily to moving the dolly at work, Ms. Pardee struggled to keep the swelling in her knee down.

17. Defendant Express Logistics was aware of the poor state of Ms. Pardee's knee and her doctor's restrictions. At that time, she started physical therapy to strengthen her leg and control the swelling.

18. Also at that time, Ms. Pardee began driving only 53 foot trailers or pups, 27 foot trailers. Ms. Pardee was no longer driving 93 foot doubles or half doubles in line with her workplace restrictions.

19. On or about January 31, 2023, Ms. Pardee went back to her doctor who continued the work restrictions. Still, Defendant Express Logistics expressed no concerns with either Ms. Pardee's work performance or restrictions.

20. A day at work for Ms. Pardee before the November 29, 2022 restrictions would be as follows:

a) She would get to work at 3466 Shippers Drive, Grand Rapids, MI at 8pm or 9pm.

b) Ms. Pardee would then pre-trip the truck she was to drive. This pre-trip usually took up to half an hour and it was unpaid. It is Department of Transportation state law to follow this procedure.

c) She would then sign into the mobile app to see what trailer(s) she was responsible for. If it was a double set, she would have to get a dolly.

d) The tractor used to pre-trip the truck was, upon information and belief, owned by Defendant Express Logistics. The trailers and dollys used were, upon information and belief, owned by FedEx Ground.

e) The trailer she would take to its destination was usually ready by 10pm.

f) Ms. Pardee would hook up her trailer(s) and drive approximately 3 (three) hours to either Toledo or Chicago.

g) Once she reached her destination, she would sign back into the app, drop off the trailer she had driven.

h) Finally, she would fuel the truck up, add the trailer(s) assigned to her and drive it back to Grand Rapids.

i) Once Ms. Pardee reached Grand Rapids, she would check in on the app to let Defendant Express Logistics know she had returned, drop off the trailer, and also return the dolly, if she had used one.

j) Ms. Pardee would then park the tractor she was in and do a post trip, which was unpaid, and which would take about 15 minutes.

21. Once Ms. Pardee was placed on work restrictions by her doctor, the only difference in her work schedule was that Defendant Express Logistics would only assign her to 53 foot trailers or 26 foot trailers, which is half of a double.

22. Ms. Pardee continued to conduct pre and post trip truck inspections on work days, always checked her trailer, was always on time, and continued to rehab in order to get off work restrictions and return to her normal life.

23. On or about Sunday, February 5, 2023, Ms. Pardee received a text from Pedro Lerma, her manager, that FedEx would no longer accept workers with restrictions. Prior to that date, only the Toledo hub was not allowing workers with restrictions to drive; it made workers on restriction bobtail with no trailer back to Grand Rapids with no pay.

24. Ms. Pardee asked Mr. Lerma if she could transport trailers to Chicago instead, because the Chicago hub still accepted drivers with work restrictions.

25. Mr. Lerma agreed and told Ms. Pardee that Defendant Express Logistics could do that for her. On or about February 6, 2023, Ms. Pardee transported a load to Chicago.

26. On or about Thursday, February 9, 2023, Defendant Express Logistics sent Ms. Pardee her Saturday work schedule which required her to pull three (3) different sets of doubles. This was against her work restrictions.

27. Defendant Express Logistics expected Ms. Pardee to drive a set to Toledo, then drive another set to Van Buren, then hook another set to drive back to Grand Rapids.

28. On that same day, Defendant Express Logistics told Ms. Pardee that she was no longer a full time employee and would no longer be getting PTO or detention time.

29. The last day Ms. Pardee worked for Defendant Express Logistics was February 6, 2023.

30. Defendant Express Logistics terminated Ms. Pardee on February 11, 2023.

31. At all relevant times, Ms. Pardee performed her job duties and responsibilities in a manner that, at a minimum, demonstrated that she was qualified to retain her position.

### **COUNT I – VIOLATION OF TITLE I OF THE ADA, AND PDCRA – DISCRIMINATION**
### **VIOLATION OF TITLE VII – DISABILITY DISCRIMINATION**

32. Ms. Pardee repeats and realleges each and every paragraph of this Complaint as though fully set forth herein verbatim.

33. Defendant Express Logistics is a covered entity, and employer, pursuant to 42 U.S. Code § 1211 *et seq.* of the ADA and MCL 37.1201(b) of the PDCRA.

34. Ms. Pardee was an employee as defined by 42 U.S. Code § 12111 *et seq.* of the ADA and MCL 37.1201(b) of the PDCRA.

35. Ms. Pardee's knee injury constitutes a disability, as that term is defined by and pursuant to 42 USC § 12102(1) of the ADA, and MCL 37.1103(h), MCL 37.1103(d), MCL 37.1103(d)(ii), and MCL 37.1103(d)(iii) of the PDCRA.

36. Ms. Pardee was, and is, otherwise qualified to perform the essential functions of her job as a truck driver.

37. The ADA makes it unlawful to discriminate against a qualified individual in the terms and conditions of employment on the basis of disability.  42 U.S.C. § 12112(a).

38. Defendant Express Logistics knew Ms. Pardee had a disability, had a history of a disability, or was perceived by the employer as having a disability.

39. Defendant Express Logistics has intentionally discriminated against Ms. Pardee because of her disability by:

      a) Failing to engage in a proper analysis for her accommodation; and

      b) Failing to provide proper accommodation.

      c) Terminating Ms. Pardee.

40. These adverse employment actions were due to Ms. Pardee's disability.

41. As a direct and proximate result of Defendant Express Logistics' discriminatory and illegal acts, which acts were based on unlawful considerations of Ms. Pardee's disability, Ms. Pardee suffered damages, including but not limited to: (1) loss of past and future employment income and employee benefits, (2) personal injuries including but are not limited to mental, emotional, and psychological distress, anxiety, humiliation, embarrassment, derogation, pain and suffering, and physical ailments, (3) a sense of outrage and injury to Plaintiffs' feelings, and (4) injury to Plaintiff's professional reputation.

**WHEREFORE**, Ms. Pardee respectfully requests that this Court enter its Judgment against Defendant Express Logistics, in favor of Ms. Pardee, in whatever amount is shown to be established by the proofs in this case, awarding Plaintiff all economic damages, back pay, front pay, compensatory damages, non-economic damages, exemplary damages, punitive damages, attorney fees and costs, and pre- and post-judgment interest, as well as such other and further legal or equitable relief as this Court deems appropriate and available under the law.

**COUNT II – FAILURE TO ACCOMMODATE IN VIOLATION OF ADA AND PDCRA**

42. Ms. Pardee repeats and realleges each and every paragraph of this Complaint as though fully set forth herein.

43. Defendant Express Logistics is a covered entity, and employer, pursuant to 42 U.S. Code § 12111 *et seq.* of the ADA and MCL 37.1201(b) of the PDCRA.

44. Ms. Pardee was an employee as defined by 42 U.S. Code § 12111 *et seq.* of the ADA and MCL 37.1201(b) of the PDCRA.

45. Ms. Pardee's knee injury constitutes a disability, as that term is defined by and pursuant to 42 U.S.C. § 12102(1) of the ADA, and MCL 37.1103(h), MCL 37.1103(d), MCL 37.1103(d)(ii), and MCL 37.1103(d)(iii) of the PDCRA.

46. Ms. Pardee was, and is, otherwise qualified to perform the essential functions of her job as a truck driver.

47. At the time Defendant Express Logistics required Ms. Pardee to work (3) three double shifts, her disability was unrelated to her ability to perform her duties as a truck driver.

48. Ms. Pardee requires reasonable accommodation to perform her job as follows: Ms. Pardee requires the flexibility to transport certain sized trailers to avoid excessive stress on her knees and to assist her with her disability.

49. Ms. Pardee made the request to drive certain loads and to certain locations to Mr. Lerma, her manager, after she was hired by Defendant Express Logistics.

50. Despite Ms. Pardee's request for such accommodation, Defendant Express Logistics failed to make that accommodation available to Ms. Pardee.

51. Defendant Express Logistics denied the request by scheduling Ms. Pardee to drive three (3) different sets of doubles on February 11, 2023 and then alleging that Ms. Pardee was not able to perform her duties.

52. The accommodations requested by Ms. Pardee would not have caused an undue hardship to Defendant Express Logistics.

53. Defendant Express Logistics failed to engage in an interactive process with Ms. Pardee to come up with an accommodation that would allow Ms. Pardee to work remotely to perform her job.

54. Ms. Pardee would have provided any and all documentation sought by Defendant Express Logistics.

55. Ms. Pardee was also generally treated with disrespect, callousness, and/or indifference by Defendant Express Logistics and its employees, with staff making it abundantly clear that Defendant Express Logistics took a dim view of Ms. Pardee's accommodation request.

56. The work requested by Ms. Pardee created no undue burden, or cost, to Defendant Express Logistics.

57. In short, allowing Ms. Pardee to drive tractors and trailers of a certain size would not create an undue hardship for Defendant Express Logistics.

58. As a direct and proximate result of Defendant Express Logistics' discriminatory and illegal acts, which acts were based on unlawful considerations of Ms. Pardee's disability, Ms. Pardee suffered damages, including but not limited to: (1) loss of past and future employment income and employee benefits, (2) personal injuries including but are not limited to mental, emotional, and psychological distress, anxiety, humiliation, embarrassment, derogation, pain and suffering, and physical ailments, (3) a sense of outrage and injury to Plaintiffs' feelings, and (4) injury to Plaintiff's professional reputation.

**WHEREFORE**, Ms. Pardee respectfully requests that this Court enter its Judgment against Defendant Express Logistics, in favor of Ms. Pardee, in whatever amount is shown to be established by the proofs in this case, awarding Plaintiff all economic damages, back pay, front pay, compensatory damages, non-economic damages, exemplary damages, punitive damages,

attorney fees and costs, and pre- and post-judgment interest, as well as such other and further legal or equitable relief as this Court deems appropriate and available under the law.

### **COUNT III – WRONGFUL TERMINATION IN VIOLATION OF ADA AND PDCRA**

59. Ms. Pardee repeats and realleges each and every paragraph of this Complaint as though fully set forth herein.

60. Defendant Express Logistics is a covered entity, and employer, pursuant to 42 U.S. Code § 12111 *et seq.* of the ADA and MCL 37.1201(b) of the PDCRA.

61. Ms. Pardee was an employee as defined by 42 U.S. Code § 12111 *et seq.* of the ADA and MCL 37.1201(b) of the PDCRA.

62. Ms. Pardee's knee injury constitutes a disability, as that term is defined by and pursuant to 42 U.S.C. § 12102(1) of the ADA, and MCL 37.1103(h), MCL 37.1103(d), MCL 37.1103(d)(ii), and MCL 37.1103(d)(iii) of the PDCRA.

63. Ms. Pardee was, and is, otherwise qualified to perform the essential functions of her job as a truck driver.

64. At the time Defendant Express Logistics required Ms. Pardee to work (3) three double shifts, her disability was unrelated to her ability to perform her duties as a truck driver.

65. Ms. Pardee requires reasonable accommodations to perform her job as follows: Ms. Pardee requires the flexibility to transport certain sized trailers to avoid excessive stress on her knees and to assist her with her disability.

66. Ms. Pardee made the request to drive certain loads and to certain locations to Mr. Lerma, her manager, after she was hired by Defendant Express Logistics.

67. Despite Ms. Pardee's request for such accommodation, Defendant Express Logistics failed to make that accommodation available to Ms. Pardee.

68. Defendant Express Logistics denied the request by scheduling Ms. Pardee to drive three (3) different sets of doubles on February 11, 2023 and then alleging that Ms. Pardee was not able to perform her duties.

69. The accommodations requested by Ms. Pardee would not have caused an undue hardship to Defendant Express Logistics.

70. Defendant Express Logistics failed to engage in an interactive process with Ms. Pardee to come up with an accommodation that would allow Ms. Pardee to work remotely to perform her job.

71. Ms. Pardee would have provided any and all documentation sought by Defendant Express Logistics.

72. Ms. Pardee was also generally treated with disrespect, callousness, and/or indifference by Defendant Express Logistics and its employees, with staff making it abundantly clear that Defendant Express Logistics took a dim view of Ms. Pardee's accommodation request.

73. The work requested by Ms. Pardee created no undue burden, or cost, to Defendant Express Logistics.

74. In short, allowing Ms. Pardee to drive tractors and trailers of a certain size would not create an undue hardship for Defendant Express Logistics.

75. Defendant Express Logistics wrongfully terminated Ms. Pardee due to her disability.

76. As a direct and proximate result of Defendant Express Logistics' discriminatory and illegal acts, which acts were based on unlawful considerations of Ms. Pardee's disability, Ms. Pardee suffered damages, including but not limited to: (1) loss of past and future employment income and employee benefits, (2) personal injuries including but are not limited to mental,

emotional, and psychological distress, anxiety, humiliation, embarrassment, derogation, pain and suffering, and physical ailments, (3) a sense of outrage and injury to Plaintiffs' feelings, and (4) injury to Plaintiff's professional reputation.

**WHEREFORE**, Ms. Pardee respectfully requests that this Court enter its Judgment against Defendant Express Logistics, in favor of Ms. Pardee, in whatever amount is shown to be established by the proofs in this case, awarding Plaintiff all economic damages, back pay, front pay, compensatory damages, non-economic damages, exemplary damages, punitive damages, attorney fees and costs, and pre- and post-judgment interest, as well as such other and further legal or equitable relief as this Court deems appropriate and available under the law.

Dated: April 29, 2024	**GREWAL LAW PLLC**

By:	/s/ Tim P. Seeger
	TIM P. SEEGER (P83315)
	*Attorney for Plaintiff*
	801 Broadway, NW, Ste. 302
	Grand Rapids, MI 49504
	(616) 259-8463
	tseeger@4grewal.com

## DEMAND FOR JURY TRIAL

**NOW COMES** Plaintiff, Hailie Pardee, by and through her attorneys, Tim P. Seeger and G<small>REWAL</small> L<small>AW</small> PLLC, and hereby makes a demand for a trial by jury in the above-entitled matter.

Dated: April 29, 2024

**G<small>REWAL</small> L<small>AW</small> PLLC**

By: /s/ Tim P. Seeger
**TIM P. SEEGER (P83315)**
*Attorney for Plaintiff*
801 Broadway, NW, Ste. 302
Grand Rapids, MI 49504
(616) 259-8463
tseeger@4grewal.com